IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ORTIZ GLAZE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, CITY OF CHICAGO | ) | |
| POLICE OFFICERS LOUIS GARCIA, JEFFREY | ) | Honorable Amy J. St. Eve |
| JONES, CARLOS VELEZ, SENORA BEN, LOU | ) | |
| TOTH, RODOLFO CAMARILLO, JOSEPH | ) | Case No. 14 C 3120 |
| CLAUSSEN JR., JOHN DOHERTY JR., | ) | |
| THOMAS DINEEN, RAYMOND PIERCE, | ) | |
| STANLEY KALICKI, BRIAN SMITH, M. | ) | |
| RICHARDS (#612), A. CABRAL (#4855), | ) | JURY TRIAL DEMANDED |
| HERNANDEZ (#5655), CALDWELL (#16952), | ) | |
| OWARE (#8554), CONNOLLY (#21407), and AS- | ) | |
| YET UNKNOWN CITY OF CHICAGO POLICE | ) | |
| OFFICERS. | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Ortiz Glaze, by and through his attorneys, Loevy & Loevy, complains of

Defendants City of Chicago, Chicago Police Officers Louis Garcia, Jeffrey Jones, Carlos Velez,

Senora Ben, Lou Toth, Rodolfo Camarillo, Joseph Claussen, Jr., John Doherty, Jr., Thomas

Dineen, Raymond Pierce, Stanley Kalicki, Brian Smith, M. Richards (#612), A. Cabral (#4855),

Hernandez (#5655), Caldwell (#16952), Oware (#8554), Connolly (#21407), and other as yet

unknown Chicago Police Officers (collectively, "Defendant Officers"), and states as follows:

### Introduction

1.      Mr. Glaze was shot from behind by Chicago Police Officers Louis Garcia and

Jeffrey Jones without lawful justification.  At the time of the shooting, Mr. Glaze was unarmed,

presented no threat to the Defendant Officers or anyone else, and was running away.

2.      To cover up the unjustified shooting, the Defendant Officers falsely claimed that Mr. Glaze had threatened Defendants Jones and Garcia with a firearm and pursued false criminal charges against him.

3.      The Defendant Officers' unlawful conduct is the product of policies and practices of the Chicago Police Department ("CPD").  For years, CPD has permitted its officers to shoot at Chicago residents without any meaningful training, supervision, post-incident review, or discipline and to engage in the falsification of evidence and pursuit of false charges to cover up misconduct.

4.      Mr. Glaze brings this action pursuant to 42 U.S.C. § 1983 and Illinois law to redress his injuries and to end the unjustified shooting by CPD officers of Chicago residents.

### Jurisdiction and Venue

5.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1367.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b). The events giving rise to the claims asserted herein all occurred within the district, Defendant City of Chicago is a municipal corporation located here, and, on information and belief, all or most of the parties reside in this judicial district.

### Parties

7.      Plaintiff Ortiz Glaze is a 36-year old Chicago native and father of two with an associate's degree in physical education.  He attended both Kennedy King Community College and LeMoyne-Owen College on athletic scholarships.  He has never been convicted of any crime.

8.      Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois.

9.     Defendants Louis Garcia, Jeffrey Jones, Lou Toth, Rodolfo Camarillo, Joseph Claussen, Jr., John Doherty, Jr., Thomas Dineen, Stanley Kalicki, Raymond Pierce, Brian Smith, Carlos Velez, Senora Ben, M. Richards (#612), A. Cabral (#4855), Hernandez (#5655), Caldwell (#16952), Oware (#8554), and Connolly (#21407) are Chicago police officers.  At all times relevant to this Complaint, these Defendant Officers and as-yet unknown City of Chicago police officers acted under color of law and within the scope of their employment as police officers for the City of Chicago.

## Factual Allegations

10.     Mr. Glaze spent the morning and early afternoon of April 30, 2013 preparing for a gathering and cook-out to celebrate the life of a friend who had died several weeks earlier.  The cook-out took place on the 88th block of South Burley Avenue in Chicago.

11.     People began arriving for the event at approximately 3:00 p.m.  In attendance were approximately fifty to one hundred friends, family members, and neighbors of the deceased.  The attendees included young children, senior citizens, and those who knew the deceased through church.  The weather was clear and warm.

12.     Mr. Glaze manned the grill that afternoon and a group of church members led a prayer for the deceased.  Mr. Glaze continued to help with food preparation for several hours. He went home to take a shower, and then returned.

13.     The cook-out continued past sunset under artificial lighting from the surrounding buildings.

**The Shooting of Mr. Glaze**

14.     At around 9:00 p.m., a group of the Defendant Officers arrived in three police cars traveling north on South Burley Avenue.  At the time, Mr. Glaze had just finished speaking with two friends and was walking across a parking lot near the cook-out tables.

15.     Defendant Garcia drove the first car, an unmarked Ford Crown Victoria, accompanied by Defendant Jones in the passenger seat.  Following them was another unmarked police car driven by Defendant Sergeant Senora Ben and a marked car carrying Defendants Lou Toth and Rodolfo Camarillo.

16.     Defendants Jones and Garcia drove past the barbeque tables and turned left into the parking lot, exiting the squad car.  Defendants Ben, Toth, and Camarillo parked on South Burley Avenue and also exited their squad cars.

17.     Defendant Jones then fired his gun, possibly as a warning shot.  Startled by the gunshot and the arrival of the police en mass, the crowd began to disperse and/or run away.  Mr. Glaze did too.

18.     Defendant Jones chased Mr. Glaze on foot and fired multiple series of shots at him.

19.     Defendant Garcia chased Mr. Glaze in the unmarked police car, caught up with Mr. Glaze just a few moments later, and exited his squad car.  Defendant Garcia then also fired multiple series of shots at Mr. Glaze.

20.     The Defendant Officers fired at least ten bullets at Mr. Glaze, who had done nothing to justify this use of deadly force.  Two of those bullets struck Mr. Glaze in the back of his upper left arm and in the back of his left thigh, causing him to fall to the ground.

4

21.     At the time he was shot, Mr. Glaze was running away from the Defendant Officers, had no weapon, did not reach into his waistband, and was not pointing anything, let alone a weapon, at the Defendant Officers.  He posed no threat to the Defendant Officers or anyone else.

22.     Defendants Jones and Garcia were the first two people to reach Mr. Glaze after the shooting.  Defendant Garcia searched Mr. Glaze.  Because Mr. Glaze's left arm had been immobilized by the gunshot wound, Defendants Jones and Garcia handcuffed Mr. Glaze's right hand to his belt loop.

23.     Defendant Garcia recovered no weapon from Mr. Glaze when he searched Mr. Glaze immediately after the shooting.  None of the Defendant Officers saw Mr. Glaze throw or drop a weapon at any point during their encounter with him.  Nor was Mr. Glaze wearing any bulky clothing that could conceal a weapon.

24.     Defendants Jones, Garcia, Ben, Cabral, Hernandez, Caldwell, Oware, Toth, Camarillo, and Claussen arrested Mr. Glaze.

25.     Mr. Glaze was sent by ambulance to the hospital for treatment of his gunshot wounds, still under the custody of the Defendant Officers.

26.     At the hospital, Mr. Glaze was unjustly treated as a dangerous criminal rather than as the victim of a crime.  The Defendant Officers fingerprinted Mr. Glaze and restrained one of Mr. Glaze's hands and one of his feet to the hospital bed.

27.     The Defendant Officers also confiscated the belongings found on Mr. Glaze, which consisted of a black iPhone, a state identification card, keys, and money.  Each of these items was inventoried at the time it was recovered from Mr. Glaze.

28.     When Mr. Glaze received his belongings back from the Defendant Officers, a sum of money was missing.

29.     On the evening of the shooting, and again the following morning, Defendant Connolly interrogated Mr. Glaze in his hospital room.

### The Malicious Charging and Prosecution of Mr. Glaze

30.     Although the Defendant Officers knew that Mr. Glaze had committed no crime and that there was no probable cause to support any criminal charge against him, they nonetheless pursued criminal charges against Mr. Glaze to cover up the unjustified shooting.

31.     The Defendant Officers attempted to persuade the Felony Review Unit of the Cook County State's Attorney's Office to seek felony charges against Mr. Glaze, falsely claiming that he had threatened Defendants Jones and Garcia.  The Felony Review Unit reviewed Mr. Glaze's case the day after the shooting and declined to file felony charges, refusing to charge Mr. Glaze with any crime.

32.     Steadfast in their efforts to pursue false charges against Mr. Glaze, the Defendant Officers falsely charged Plaintiff with four misdemeanor offenses: aggravated assault of Defendants Jones and Garcia and resisting and obstructing Defendants Jones and Garcia.

33.     In support of the charges, various Defendant Officers, including Defendants Jones, Garcia, Cabral, and Doherty claimed that each series of shots fired at Mr. Glaze by Defendants Jones and Garcia had been preceded by Mr. Glaze reaching into his waistband and making threatening movements with his right arm.

34.     Various Defendant Officers including Defendants Jones and Garcia also stated that in Mr. Glaze's right hand, he had held a firearm.  The Defendant Officers described the gun at different times as a semi-automatic firearm that was silver or chrome in color.

6

35. These statements were fabricated. As is explained above, Mr. Glaze was not carrying a gun when Defendants Jones and Garcia shot at him. Nor was he carrying any object that might have looked like a gun.

36. Indeed, the Defendant Officers recovered no gun from Mr. Glaze during their search of him or the surrounding area immediately after the shooting.

37. Nor had Mr. Glaze made any threatening movements with his right arm, let alone multiple such movements. Instead, he had been running away from Defendants Jones and Garcia, with his back to them, the entire time that they shot at him.

38. At the time of the shooting and at all times thereafter, the Defendant Officers knew that Mr. Glaze had not been carrying a weapon and that Defendants Jones and Garcia had not seen anything in his hand resembling a weapon. The Defendant Officers also knew that Mr. Glaze had not made any threatening movements with his right arm.

39. Realizing they needed a plausible explanation for shooting Mr. Glaze in the back, various Defendant Officers including Defendants Connolly, Kalicki, Dineen, and Smith conspired to plant a second cell phone on Mr. Glaze. The Defendant Officers falsely claimed that they had recovered a silver Samsung phone from Mr. Glaze at the hospital. The Samsung phone was not inventoried at the same time as the other items recovered from Mr. Glaze's pockets, such as Mr. Glaze's black iPhone. Instead, Defendant Connolly falsely claimed that the Samsung phone had appeared without explanation on top of a pile of Mr. Glaze's clothing in his hospital room. Defendant Connolly later claimed that the silver Samsung phone could have been the object that Mr. Glaze supposedly brandished at Defendants Jones and Garcia, prompting them to shoot him.

40.     For over ten months, Mr. Glaze faced false charges of aggravated assault and resisting and obstructing Defendants Jones and Garcia.

41.     Mr. Glaze was subjected to a trial on those charges on March 5, 2014. Defendants Jones, Garcia, Toth, Connolly, and Kalicki testified against him, providing false testimony.  Mr. Glaze was acquitted of all charges.

42.     As a result of the Defendants' misconduct, Mr. Glaze suffered injuries that included physical harm from two gunshot wounds, loss of liberty and property, great mental anguish, humiliation, degradation, anxiety, and financial harm.

### The City of Chicago's Policies and Practices

43.     The Defendant Officers' unlawful conduct was directly caused by CPD policy and practice regarding police shootings of civilians.  These policies and practices include inadequate training, supervision, post-incident review, and discipline.

44.     In 2013, members of the Chicago Police Department shot 42 people in addition to Mr. Glaze, killing 13.

45.     The number of shootings by Chicago Police Department officers has been unjustifiably high for years.  Chicago Police Officers shot 61 people in 2009, killing 19; 46 people in 2010, killing 13; 60 people in 2011, killing 23; and 57 people in 2012, killing 8, according to Officer-Involved Shooting Annual Reports, Independent Police Review Authority ("IPRA"), available at http://www.iprachicago.org/resources.html.

46.     Seventy-five percent of those shot by CPD officers between 2009 and 2013 have been African-American, with African-American residents over ten times more likely to be shot than white residents. To put those percentages into context, in 2012 Chicago police shot 50 African-American people and only two white people.

47.     Moreover, police officers in the City of Chicago shoot far more residents annually than officers in any other city in the United States.

48.     In 2012, for example, Chicago Police Officers killed or injured 57 people by shooting them.  In the same year, New York City police officers shot just 30 people, even though New York City has a population approximately three times greater than that of Chicago, according to Annual Firearms Discharge Report for 2012, published by the New York Police Department.  In a Wall Street Journal interview, New York Police Commissioner Raymond Kelly credited New York's success in reducing police shootings to its "improvement in training procedures and a more thorough shooting-review process."

49.     The unacceptable number of police shootings in Chicago results from the City of Chicago's inadequate policies and practices on such shootings, including a lack of any meaningful training or supervision on the use of deadly force against people fleeing from police officers.

50.     Additionally, the Chicago Police Department rarely undertakes a meaningful review when its officers shoot people, and almost never disciplines any officers in connection with such shootings.

51.     Instead, the Independent Police Review Authority exonerates CPD officers who shoot Chicago residents in over 99% of cases, regardless of the actual circumstances of the shooting, as did its predecessor, the CPD Office of Professional Standards.  Since 2000, the City of Chicago has not found any police shooting by a CPD officer to have been unjustified.

52.     The justification set forth by IPRA for such shootings always adheres closely to one of the three formulas: the deceased either: (a) pointed a gun at an officer; (b) tried to take an officer's gun; or (c) endangered someone's life.

53.     Sometimes, one of those three things did indeed occur.  However, in a disturbing number of cases, the shootings in fact fall into a fourth category: entirely unjustified shootings of Chicago residents that are improperly excused after the fact by fabrications such as that the victim pointed a gun at an officer.

54.     Mr. Glaze's shooting falls into the latter category: an unjustified shooting followed by fabrication of evidence to cover up the misconduct.

55.     Mr. Glaze was shot because the Defendant Officers believed that they could use deadly force against a fleeing African-American man without justification and that, if they did so, no one of any authority would question their conduct in any meaningful way.

56.     Defendants were correct.  Defendant supervisors Velez, Ben, Richards, Doherty, and Pierce chose not to control the actions of their subordinates and instead approved of, condoned, and participated in the Defendant Officers' unjustified shooting of Mr. Glaze, cover up of the misconduct, and pursuit of false charges against Mr. Glaze.

57.     For example, Defendant Velez, the Watch Commander, approved the use of force by Defendants Jones and Garcia just minutes after receiving documentation about the shooting. In reaching his conclusion, Defendant Velez relied exclusively on the statements of the Defendant Officers, ignoring the fact that they had shot an unarmed man in the back without any justification.  Defendant Velez stated that Mr. Glaze was "unavailable to be interviewed" for the review because he was being treated at the hospital for gunshot wounds, even though other Defendant Officers had managed prior to that time to interrogate Mr. Glaze at the hospital in connection with the false charges filed against him.  Defendant Velez declined an option to request further investigation of the shooting.  Instead, he concluded without hesitation that the

actions of Defendants Jones and Garcia "were in compliance with department procedures and directives."

## Count I -- 42 U.S.C. § 1983
### Excessive Force

58.     Each Paragraph of this Complaint is incorporated herein.

59.     In the manner described above, the conduct of one or more of the Defendant Officers constituted excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

60.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

61.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

62.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.      As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train and supervise its officers regarding the use of deadly force on fleeing suspects, such that its failure to do so manifests deliberate indifference;

b.      As a matter of both policy and practice, the City facilitates the very type of misconduct at issue here by failing to adequately review and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff. Specifically, Chicago Police Officers accused of excessive force can be confident that those

accusations will not be investigated in earnest by the CPD or IPRA, and that the CPD and IPRA will decline to recommend discipline even where the officer has engaged in excessive force;

      c.     Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the CPD and IPRA make findings of wrongdoing in a disproportionately small number of cases;

      d.     City policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. Police officers routinely fail to report instances of police misconduct and lie to protect each other from punishment, and go un-disciplined for doing so; and,

      e.     The City of Chicago has failed to act to remedy the patterns of abuse, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

      63.     As a matter of express policy, the City of Chicago does not retain most records which are more than seven years old documenting allegations of excessive force against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career.  Further, the City fails to utilize even the records that are retained to identify and respond to patterns of misconduct by its officers.

      64.     As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint.  In other words, if a police officer is accused of the same sort of misconduct twenty times in a row, IPRA will not consider those allegations if they are deemed unsustained.

65.     As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including physical harm and mental distress.

## Count II -- 42 U.S.C. § 1983
### False Arrest

66.     Each Paragraph of this Complaint is incorporated herein.

67.     As is described more fully above, one or more of the Defendant Officers falsely arrested and unlawfully detained Plaintiff without justification and without probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

68.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.

69.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

70.     The misconduct described in this Count was undertaken pursuant to the custom, policy, and/or practice of Defendant City of Chicago, such that Defendant City of Chicago is also liable, as described above.

71.     As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including physical and emotional harm.

## Count III -- 42 U.S.C. § 1983
### Unlawful Search and Seizure

72.     Each of the Paragraphs of this Complaint is incorporated herein.

73.     In the manner described above, one or more of the Defendant Officers violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure by seizing

Plaintiff without justification and without probable cause and by conducting illegal searches of his body.

74.     The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

75.     The misconduct described in this Count was undertaken pursuant to the custom, policy, and/or practice of Defendant City of Chicago, such that Defendant City of Chicago is also liable, as described above.

76.     As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including physical and emotional harm.

## Count IV -- 42 U.S.C. § 1983
## Due Process

77.     Each of the Paragraphs of this Complaint is incorporated herein.

78.     In the manner described above, the Defendant Officers, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

79.     In the manner described above, the Defendant Officers deliberately withheld exculpatory evidence from Plaintiff and others, thereby misleading and misdirecting Plaintiff's criminal prosecution.

80.     In addition, the Defendant Officers fabricated and solicited false evidence, including testimony that they knew to be false; perjured and fabricated police reports, implicating Plaintiff in crimes; and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff at his criminal trial.

81.     The Defendant Officers' misconduct directly resulted in the unjust prosecution of Plaintiff.  Absent this misconduct, the charges and the prosecution of Plaintiff could not have and would not have been pursued.

82.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

83.     As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including loss of liberty and emotional harm.

84.     The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that, as a matter of policy and practice, CPD officers regularly fabricate false evidence implicating criminal defendants in criminal conduct, fail to disclose exculpatory evidence to criminal defendants, pursue wrongful convictions through flawed investigations, and otherwise violate due process in a similar manner to that alleged herein.

85.     The above-described widespread practices were so well-settled as to constitute the de facto policy of Defendant City of Chicago.

86.     The above-described policies and practices were allowed to persist because municipal policymakers with authority over the policies and practices exhibited deliberate indifference to their existence, thereby effectively ratifying them.

87.     The above-described policies and practices were allowed to persist because Defendant City of Chicago declined to implement sufficient training or supervision of officers,

or any legitimate mechanism for discipline and review of officers who fabricated false evidence, withheld material evidence, and pursued wrongful convictions.

88.     The misconduct described in this Count was undertaken pursuant to the policy and practice of Defendant City of Chicago in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City of Chicago and its constituent agencies and municipalities, or were actually committed by persons with such final policymaking authority.

89.     The policies and practices set forth above were the moving force behind the numerous constitutional violations in this case and directly and proximately caused Plaintiff to suffer injury, including physical and emotional harm.

90.     Illinois state post-conviction tort remedies are insufficient to redress the due process violations complained of in this Count.

## Count V -- 42 U.S.C. § 1983
## Federal Malicious Prosecution[1]

91.     Each Paragraph of this Complaint is incorporated herein.

92.     In the manner described above, the Defendant Officers, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff had committed to crime, in violation of his rights secured by the Fourth and Fourteenth Amendments.

---

[1] Plaintiff recognizes that the Seventh Circuit currently holds that malicious prosecution is not actionable under 42 U.S.C. § 1983 for cases originating in Illinois. Other federal circuits have taken the opposite position. Plaintiff pleads the claim here under the Fourth and Fourteenth Amendments to preserve the issue for reconsideration in the United States Court of Appeals for the Seventh Circuit or review in the Supreme Court of the United States.

93.     In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.  Without the Defendant Officers' concealment of exculpatory evidence and fabrication of false evidence, described above, Mr. Glaze would never have been charged or prosecuted in the first place.

94.     Plaintiff was acquitted of all of the false charges against him in a bench trial.

95.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

96.     The misconduct described in this Count was undertaken pursuant to the custom, policy, and/or practice of Defendant City of Chicago, such that Defendant City of Chicago is also liable, as described above.

97.     As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including loss of liberty, emotional harm, and financial harm.

**Count VI -- 42 U.S.C. § 1983**
**Failure to Intervene**

98.     Each Paragraph of this Complaint is incorporated herein.

99.     In the manner described above, one or more of the Defendant Officers had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above, but failed to do so.

100.    The Defendant Officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

101.    The misconduct described in this Count was undertaken pursuant to the custom, policy, and/or practice of Defendant City of Chicago, such that Defendant City of Chicago is also liable, as described above.

102.    As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including physical, emotional, and financial harm.

## Count VII – 42 U.S.C. § 1983
## Unconstitutional Seizure of Money

103.    Each Paragraph of this Complaint is incorporated herein.

104.    In the manner described above, the Defendant Officers took Plaintiff's money for their personal use without any lawful basis and without ever returning that money.

105.    The misconduct described in this Count was an unreasonable seizure of Plaintiff's property, in violation of Plaintiff's rights protected by the Fourth Amendment; it was a deprivation of property without due process, in violation of Plaintiff's rights protected by the Fourteenth Amendment; and it was a taking or property for non-public use and without compensation, in violation of Plaintiff's rights protected by the Fifth and Fourteenth Amendments.

106.    The Defendant Officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

107.    As a result of Defendant Officers' misconduct described in this Count, Plaintiff has suffered injury, including physical, emotional, and financial harm.

## Count VIII -- 42 U.S.C. § 1983
## Conspiracy to Deprive Constitutional Rights

108.     Each Paragraph of this Complaint is incorporated herein.

109.     In the manner described above, there was an agreement between the Defendant Officers and other unknown co-conspirators to deprive Plaintiff of his constitutional rights.

110.     Specifically, the Defendants conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

111.     The conspiring Defendants' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

112.     As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including loss of liberty, emotional harm, and financial harm.

## Count IX -- State Law Claim
## Assault and Battery

113.     Each Paragraph of this Complaint is incorporated herein.

114.     In the manner described above, the conduct of one or more Defendant Officers, acting under color of law and within the scope of his employment, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing Plaintiff's bodily injuries.

115.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

116.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

19

117.     As a result of the offensive touching, undertaken pursuant to the City's policy and practice as described above, Plaintiff sustained bodily and other injuries, including but not limited to a reasonable apprehension of great bodily harm.

**Count X -- State Law Claim**
**False Arrest and False Imprisonment**

118.     Each Paragraph of this Complaint is incorporated herein.

119.     Plaintiff was imprisoned by the Defendant Officers, and thereby had his liberty to move about unlawfully restrained, despite the Defendant Officers' knowledge that there was no probable cause for the imprisonment.

120.     The actions of the Defendant Officers were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

121.     As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional harm.

**Count XI -- State Law Claim**
**Malicious Prosecution**

122.     Each Paragraph of this Complaint is incorporated herein.

123.     In the manner described above, the Defendant Officers commenced, caused to be commenced, and/or continued a criminal proceeding against Plaintiff for which Defendants knew there was no probable cause.

124.     The criminal proceeding terminated in Plaintiff's favor in a manner indicative of innocence.

125.     The Defendants' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

126.    As a result of Defendant Officers' misconduct described in this Count, undertaken

pursuant to the City's policy and practice as described above, Plaintiff has suffered injury,

including emotional harm.

**Count XII -- State Law Claim**
**Conspiracy**

127.    Each of the Paragraphs of this Complaint is incorporated herein.

128.    In the manner described above, the Defendant Officers, acting in concert, reached

an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired

by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these

co-conspirators agreed among themselves to protect one another from liability for depriving

Plaintiff of these rights.

129.    In furtherance of their conspiracy, each of these co-conspirators committed overt

acts and were otherwise willful participants in joint activity.

130.    The misconduct described in this Count was objectively unreasonable and was

undertaken intentionally, with malice, with reckless indifference to the rights of others, and in

total disregard of the truth and Plaintiff's innocence.

131.    As a result of Defendant Officers' misconduct described in this Count, undertaken

pursuant to the City's policy and practice as described above, Plaintiff suffered injury, including

loss of liberty, emotional harm, and financial harm.

**Count XIII -- State Law Claim**
**Intentional Infliction of Emotional Distress**

132.    Each of the Paragraphs of this Complaint is incorporated herein.

133.    The actions, omissions, and conduct of the Defendant Officers as set forth above

were extreme and outrageous. These actions were rooted in an abuse of power and authority and

21

were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

134.     As a direct and proximate result of the Defendant Officers' actions, Plaintiff suffered injury, including emotional and financial harm.

**Count XIV -- State Law Claim**
**Conversion and Trover**

135.     Each of the Paragraphs of this Complaint is incorporated herein.

136.     The Defendant Officers unlawfully exercised dominion or control over Plaintiff's money and the money was not returned to Plaintiff.

137.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

138.     The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment and under color of law such that their employer is liable for their actions.

139.     As a result of the Defendant Officers' misconduct as described in this Count, Plaintiff suffered injury, including loss of property.

**Count XV -- State Law Claim**
**Respondeat Superior**

140.     Each Paragraph of this Complaint is incorporated herein.

141.     In committing the acts alleged in the preceding paragraphs, the Defendant Officers were members and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

142.     Defendant City of Chicago is liable as principal for all torts committed by its agents.

22

**Count XVI -- State Law Claim**
**Indemnification**

143.     Each Paragraph of this Complaint is incorporated herein.

144.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

145.     The Defendant Officers are or were employees of the Chicago Police Department who acted within the scope of their employment in committing the misconduct described above.

WHEREFORE, Plaintiff Ortiz Glaze respectfully requests that this Court enter judgment in his favor and against Defendants City of Chicago and the Defendant Officers, awarding compensatory damages and attorneys' fees, along with punitive damages against the Defendant Officers in their individual capacities, and any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff Ortiz Glaze hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: May 22, 2014                            RESPECTFULLY SUBMITTED,


/s/_Ruth Z. Brown
Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Russell Ainsworth
Steven Art
Ruth Z. Brown
LOEVY & LOEVY
312 North May St., Suite 100
Chicago, IL 60607
(312) 243-5900

<u>**CERTIFICATE OF SERVICE**</u>

I, Ruth Brown, an attorney, certify that on May 22, 2014, I served the foregoing First Amended Complaint to counsel of record via the CM/ECF filing system.

<u>/s/ Ruth Brown</u>