IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ORTIZ GLAZE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 3120 |
| | ) | |
| v. | ) | Judge Amy St. Eve |
| | ) | |
| CITY OF CHICAGO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

The Court, in its discretion, grants in part and denies in part Plaintiff's motion to quash the November 4, 2014, and November 13, 2014, subpoenas [80].

### STATEMENT

On May 22, 2014, Plaintiff Ortiz Glaze filed a sixteen-count First Amended Complaint against Defendants City of Chicago and certain Chicago police officers alleging constitutional violations, including Fourth Amendment excessive force, false arrest, and unlawful search and seizure claims, as well as state law claims. On November 4, 2014, Defendants issued subpoenas for Plaintiff's academic and medical records to the Chicago Board of Education, Kennedy-King College, Le-Moyne Owen College, Southwestern Michigan College, Advocate Trinity Hospital, Oak Forest Health Center, Rush Medical Center, and Stroger Hospital of Cook County. On November 13, 2014, Defendants issued two additional subpoenas for Plaintiff's medical records to Advocate Christ Medical Center. Before the Court is Plaintiff's motion to quash these subpoenas. For the following reasons, the Court, in its discretion, grants in part and denies in part Plaintiff's motion to quash in accordance with this Order.

### LEGAL STANDARD

"Rule 45 establishes the proper procedure for issuing subpoenas." *Ott v. City of Milwaukee*, 682 F.3d 552, 556 (7th Cir. 2012). Specifically, Rule 45(d)(3)(A) provides that a court shall quash or modify a subpoena if it requires disclosure of privileged information or subjects a person to undue burden. *See* Fed.R.Civ.P. 45(d)(3)(A)(iii), (iv); *SEC v. Hyatt,* 621 F.3d 687, 694 (7th Cir. 2010); *Northwestern Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 935 (7th Cir. 2004). Also, a district court may quash or modify a subpoena if it seeks discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed.R.Civ.P. 26(b)(2)(C). As with all discovery disputes, motions to quash are within the sound discretion of the district court.

*See Ott,* 682 F.3d at 556; *see also Jones v. City of Elkhart, Ind.,* 737 F.3d 1107, 1115-16 (7th Cir. 2013) ("district courts enjoy extremely broad discretion in controlling discovery").

## BACKGROUND

In his First Amended Complaint, Glaze alleges that he spent the morning and early afternoon of April 30, 2013, preparing for a gathering and cook-out that took place on the 88th block of South Burley Avenue in Chicago. (R. 10, First Am. Compl. ¶ 10.) The cook-out, commemorating a deceased friend, included entertaining over fifty friends, family members, and neighbors of all ages. (*Id*. ¶¶ 10, 11). At around 9:00 p.m., a group of Defendant Officers arrived in three police cars traveling north on South Burley Avenue. (*Id*. ¶ 14.) After exiting an unmarked police car, Defendant Jones fired his gun—possibly as a warning shot. (*Id*. ¶ 17.) Startled by the gunshot and the arrival of the police officers, the crowd began to disperse and/or run away, including Glaze. (*Id*. ¶¶ 17, 24.)

Plaintiff further alleges that Defendant Jones chased him on foot and fired shots at him. (*Id*. ¶ 18.) Also, Defendant Garcia chased Glaze in the unmarked police car, caught up with him just a few moments later, and exited his squad car. (*Id*. ¶ 19.) Defendant Garcia then fired multiple shots at Glaze. (*Id*.) In total, Defendant Officers fired at least ten bullets at Glaze, two of which struck Glaze in the back of his upper left arm and the back of his left thigh causing him to fall to the ground. (*Id*. ¶ 20.) According to Glaze, at the time Defendant Officers shot him, he was unarmed, did not reach for his waistband, was not pointing anything, and did not pose a threat to the officers. (*Id.* ¶ 21.)

## ANALYSIS

In his motion to quash, Plaintiff explains that the subpoenas at issue seek personal information regarding his medical and academic background without temporal, topical, or other restrictions, and thus the subpoenas are overly broad. Moreover, Plaintiff contends that unrestricted discovery into his medical and educational background infringes on his privacy interests.

On the other hand, Defendants argue that Plaintiff has interjected the issue of his college background into this case through his pleadings and lost wages claim. Defendants, however, agree to withdraw their subpoena for Plaintiff's high school records. Further, Defendants contend that because Plaintiff was shot on two prior occasions to the shooting in this lawsuit, Defendants should have access to Plaintiff's past medical records.

### I.     Medical Records

First, Plaintiff maintains that during the course of fact discovery, he has turned over all medical records from Stroger Hospital relating to his care and treatment for the two gunshot wounds concerning the incident at issue in this lawsuit. Plaintiff further argues that Defendants' request for "any and all medical records" related to his entire medical history is overly broad.

The Court agrees. *See Carter v. National Int'l Roofing Corp.,* No. 00 C 50314, 2003 WL 21664832, at *1 (N.D. Ill. July 15, 2003) (medical records going back five years justified, instead of "records dating back to Plaintiff's childhood"); *see also Fort Wayne Women's Health v. Board of Comm'rs, Allen County, Ind.*, 735 F.Supp.2d 1045, 1057 (N.D. Ind. 2010) ("Medical patients have an actual expectation of privacy in their medical records and society sees this expectation as reasonable."). As to the older medical records concerning his earlier gunshot wounds, Plaintiff proposes a compromise limiting the medical records to five years prior to the incident at issue. This five year temporal restriction would include Plaintiff's medical records involving his gunshot wounds to his left shoulder from 2010 or 2011, but not his medical records regarding his foot injuries from 1996 or 1997, which are not relevant to Plaintiff's 2013 injuries. *See Miller UK Ltd. v. Caterpillar, Inc.,* 17 F.Supp.3d 711, 721 (N.D. Ill.2014) ("'[D]iscovery ... has ultimate and necessary boundaries' and limitations, 'one of which comes into existence when inquiry touches upon the irrelevant.'") (citation omitted). As such, the Court adopts Plaintiff's compromise of a temporal limitation of five years as reasonable under the circumstances. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 320 (7th Cir. 2003) (District court has substantial discretion to curtail intrusive discovery).

Although it is not clear at this juncture if Plaintiff is seeking "garden variety" emotional damages, he has yet to waive the psychotherapist-patient privilege. *See Flowers v. Owens*, 274 F.R.D. 218, 225 (N.D. Ill. 2011). Therefore, the subpoenaed records should be returnable to Plaintiff's counsel so that counsel can review the documents for any privileged information, such as psychotherapist notes. Plaintiff's counsel must produce the documents, and, if necessary, a privilege log, within three business days after receiving the subpoenaed documents. *See Caine v. Burge,* No. 11 C 8996, 2012 WL 6720597, at *4 (N.D. Ill. Dec. 27, 2012). The Court notes that if Plaintiff continues to assert this privilege, he may limit or prevent the recovery of any emotional damages. *See Doe v. Oberweis*, 456 F.3d 704, 718 (7th Cir. 2006).

## II.     College Records

Next, Defendants subpoenaed Plaintiff's college records from 1996 to 2001. Defendants intimate that they have to right to confirm Plaintiff's college background. Therefore, Plaintiff's transcripts of his classes and any documents concerning whether Plaintiff received a degree are relevant and discoverable. Defendants further explain that Plaintiff's discipline in college "could certainly impact Plaintiff's ability to find a job." Plaintiff's employment history in the last ten years involves coaching sports and working in trucking, therefore, any history of academic discipline from over a decade ago hardly seems relevant. *See Miller UK Ltd.,* 17 F.Supp.3d at 721 (federal discovery rules "were never intended to be an excursion ticket to an unlimited exploration of every conceivable matter that captures an attorney's interest").

Nevertheless, Defendants seek information regarding Southwestern Michigan Junior College expelling Plaintiff for alleged sexual misconduct in 1996. Plaintiff contends that not only did he maintain his innocence as to this 1996 incident, but he proved it at trial and was acquitted of any such charges. Information regarding Plaintiff's alleged involvement in a crime in which he was acquitted does not bear on Defendants' liability, any defenses, or damages

Plaintiff suffered as a result of the April 2013 incident. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) ("Discovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1).") (citation omitted).

On a final note, in his opening brief, Plaintiff asserts that he has a privacy interest in his student records under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. Indeed, before disclosure of any FERPA protected documents, the party seeking disclosure "is required to demonstrate a genuine need for the information that outweighs the privacy interests of the students." *Ragusa v. Malverne Union Free Sch. Dist.,* 549 F.Supp.2d 288, 292 (E.D.N Y. 2008) (citations omitted). Defendants did not address Plaintiff's argument based on FERPA nor did Defendants demonstrate a need for any information outside of Plaintiff's transcripts and information concerning whether Plaintiff received a degree from any of the academic institutions that Defendants subpoenaed.

For these reasons, the Court, in its discretion, grants in part and denies in part Plaintiff's motion to quash the November 4, 2014, and November 13, 2014, subpoenas.

**Dated:** December 17, 2014

**AMY J. ST. EVE**
**United States District Court Judge**

4